OPINION OF THE COURT
Jane S. Solomon, J.
This proposed class action challenges the constitutionality of Tax Law § 523, which requires the collection of a tax on fuel use on commercial vehicles based on their miles driven on the Governor Thomas E. Dewey Thruway, also known as the New York State Thruway (Thruway). Defendant Michael H. Ur-bach, the former Commissioner of the New York State Department of Taxation and Finance (Department), moves to dismiss the proposed class action complaint for failure to state a cause of action (CPLR 3211 [a] [7]), and for lack of subject matter jurisdiction due to plaintiffs’ failure to exhaust administrative remedies (CPLR 3211 [a] [2]).
FACTUAL BACKGROUND
Plaintiff Owner-Operator Independent Drivers Association (Association) is a business association of persons and entities who own and operate motor carrier equipment. The Association, which was founded in 1973 and has over 40,000 members, is a not-for-profit corporation which is incorporated and has its principal place of business in the State of Missouri. The individual plaintiffs, Raymond L. Kasicki and Harry Kijowski, reside in Ohio and New York, respectively. Both of them operate tractor trailers on highways of the State of New York.
The challenged statute was enacted by Laws of 1994 (ch 170, § 8 [eff Jan. 1, 1996]). The statute provides a tax on fuel use “for the privilege of operating any qualified motor vehicle upon the public highways of this state.” (Tax Law § 523 [a].) The fuel use tax (FUT) applies to vehicles engaged in either intrastate or interstate commerce. The FUT is only collected on fuel consumed while driving on the public highways in New York. The operator of a motor carrier purchasing fuel within the State is entitled to a credit or refund for the tax paid for such fuel at the pump when the fuel is consumed outside the State. (Tax Law § 524.) The operator of a motor carrier which purchases fuel outside the State but consumes the fuel within the State is required to pay the FUT to New York.
DISCUSSION
Since defendant moved to dismiss prior to answering, all of plaintiffs’ allegations are presumed to be true. (Weinbaum v *578 Cuomo, 219 AD2d 554 [1st Dept 1995], appeal dismissed 87 NY2d 917 [1996].)
Plaintiffs assert that New York’s FUT violates article I (§ 8, cl [3]) of the United States Constitution (the Commerce Clause), which is referred to as the negative or dormant Commerce Clause. The basis for this argument is that plaintiffs have paid fuel use taxes of 30 cents per gallon[1] of fuel consumed while traveling the Thruway, and have paid tolls to the Thruway Authority — an independent agency that receives no funds from the State for the construction, maintenance or operation of the Thruway — for their use of the Thruway. Plaintiffs’ position is that the tolls collected pay for all material services provided to commercial vehicles operating on the Thruway.[2] Plaintiffs maintain that the Department’s collection of FUT on account of miles driven by commercial vehicles on the-Thruway is not fairly related to any services provided by the State of New York in connection with interstate travel over the Thruway, since the FUT collected is not used for the maintenance or operation of the Thruway. Therefore, plaintiffs assert, the collection of FUT on the basis of miles driven by commercial vehicles on the Thruway is an undue burden on interstate commerce.
“[T]he negative, or dormant, [Commerce] Clause invalidates only State measures which ‘unjustifiably * * * discriminate against or burden the interstate flow of articles of commerce.’ ” (Matter of Tamagni v Tax Appeals Tribunal, 91 NY2d 530, 539, cert denied 525 US 931 [1998], quoting Oregon Waste Sys. v Department of Envtl. Quality, 511 US 93, 98 [1994].) As the Court of Appeals stated, in Tamagni, a court’s first step in analyzing any law subject to scrutiny under the negative Commerce Clause “ ‘is to determine whether it “regulates evenhandedly with only ‘incidental’ effects on interstate commerce, or discriminates against interstate commerce” * * * As we use the term here, “discrimination” simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter’ (id., at 99, quoting Hughes v Oklahoma, supra, 441 US, at 336). If there is no dif *579 ferential treatment of identifiable, similarly situated in-State and out-of-State interests, there is no dormant Commerce Clause violation.” (Matter of Tamagni v Tax Appeals Tribunal, supra, 91 NY2d, at 539.) Put another way, “the first step in the dormant Commerce Clause inquiry * * * is to identify the interstate market that is being subjected to discriminatory or unduly burdensome taxation.” (Supra, at 540.)
The tax at issue here does not operate to the disadvantage of any identifiable interstate market. The tax applies in exactly the same manner with respect to intrastate and interstate users of New York’s roadways. Both interstate and intrastate drivers are taxed based on in-State fuel usage and solely on such in-State usage; there is no differential treatment of intrastate and interstate commercial interests. Additionally, fuel usage on the Thruway is not treated differently than fuel usage on any other New York State roadway. Accordingly, plaintiffs cannot meet the threshold of demonstrating that two groups have been treated differently so as to improperly burden interstate commerce.
Even assuming, arguendo, that plaintiffs had met this threshold inquiry, plaintiffs’ claim fails under Complete Auto Tr. v Brady (430 US 274, reh denied 430 US 976 [1977]). In Complete Auto (supra), the Supreme Court set forth the test to determine whether a particular tax violates the Commerce Clause. The Court explained that a tax will be sustained against a Commerce Clause challenge if the tax “is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.” (Supra, at 279.) Here, plaintiffs’ challenge to Tax Law § 523 fails under the fourth prong of the Complete Auto standard, since the tax is “fairly related to the services provided by the State.”
The “fair relation” prong of the Complete Auto test “requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxed activity. If the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event. Interstate commerce may thus be made to pay its fair share of state expenses and ‘ “contribute to the cost of providing all governmental services, including those services from which it arguably receives no direct ‘benefit.’ ” ’ ” (Oklahoma Tax *580 Commn. v Jefferson Lines, 514 US 175, 199-200, reh denied 514 US 1135 [1995], quoting Goldberg v Sweet, 488 US 252, 267 [1989].) In Oklahoma Tax Commn. v Jefferson Lines (supra, 514 US, at 200), the Court upheld a tax on interstate bus ticket sales, illustrating that “[t]he bus terminal may not catch fire during the sale, and no robbery there may be foiled while the buyer is getting his ticket, but police and fire protection, along with the usual and usually forgotten advantages conferred by the State’s maintenance of a civilized society, are justifications enough for the imposition of a tax.” Here, too, plaintiffs may never need the services of the fire or police departments, but these services are available if needed. (See, New York State Thruway Auth. v Dufel, 129 AD2d 44, 47 [3d Dept 1987] [discussing the joint efforts of the State and Thruway Authority to address emergencies relating to operation of the Thruway and its commercial traffic following collapse of Thruway bridge]; see also, Matter of Brooks v Forsythe, 189 AD2d 26 [3d Dept 1993]; Hutley v New York State Thruway Auth., 139 Misc 2d 868 [Ct Cl 1988].) At a minimum, though, plaintiffs have no doubt used local and access roads, which are not funded by the Thruway Authority.[3] Even assuming plaintiffs’ claim is true— i.e., that the full cost of the Thruway is covered by the tolls imposed — the State provides other services that may be paid for through the FUT.
Moreover, plaintiffs acknowledge that “there is almost a perfect correlation between the use of the road and the amount of the tax paid.” (Plaintiffs’ Mem of Law in Opposition, at 15.) “[W]hen the measure of a tax is reasonably related to the taxpayer’s activities or presence in the State — from which it derives some benefit * * * the taxpayer will realize, in proper proportion to the taxes it pays * * * [the benefit] ‘of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.’ ” (Commonwealth Edison Co. v Montana, 453 US 609, 628-629 [1981], quoting Carmichael v Southern Coal & Coke Co., 301 US 495, 522 [1937].) Therefore, to the extent that this court need reach the Complete Auto test, defendant has met its burden of showing that the FUT imposed on the use of the Thruway is fairly related to the services provided by the State. (See, Holmes Co. v McNamara, 486 US 24, 32 [1988] [provision of police and fire protection, together *581 with other civic services, satisfied Complete Auto test].) Plaintiffs derive a substantial benefit from the State for the use of its highway system; the tolls paid for the use of the Thruway do not cover these additional benefits and expenses to the State. Since the PUT is fairly related to these additional benefits and services, it survives plaintiffs’ constitutional challenge.
In view of the foregoing, this court need not address the issue of exhaustion of administrative remedies with respect to a refund of the taxes paid.
The procedural posture of defendant’s motion is a motion to dismiss the complaint. Plaintiffs assert that at this stage of the proceeding, on a motion to dismiss, the only issue before the court is whether the court has jurisdiction of the matter and not whether or not the plaintiffs are entitled to a favorable declaratory judgment. To the contrary, if no issue of fact is raised by the pleadings, or if the facts are conceded, a proper case is presented for judgment on the merits on defendant’s motion to dismiss the complaint. (Law Research Serv. v Honeywell, Inc., 31 AD2d 900, 901 [1st Dept 1969].) The proper relief here is a declaration in defendants’ favor. (See, Friedman v Board ofEduc., 259 AD2d 464 [2d Dept 1999].)
Accordingly, it is ordered that defendant’s motion to dismiss is granted; and it is further adjudged and declared that Tax Law § 523 does not violate the Commerce Clause.

. While defendant asserts that the FUT is actually 16 cents per gallon, and that plaintiffs have actually included a petroleum business tax in their calculation, the amount of the FUT is not a material factual issue.

. Plaintiffs’ assertion is based on the 1997 Annual Report of the New York State Thruway Authority, which states (at 16, 28) that the Authority is “self-supporting from tolls and other sources”- and that “[t]he Authority is solely responsible for its finances.”

. This court rejects plaintiffs’ assertion that whether commercial vehicles derive any benefit from local police, fire and ambulance services, and local roads and access roads not funded by the Thruway, raises a factual issue that cannot be considered on a motion to dismiss.